[Civ. No. 29528.   Second Dist., Div. Two.   May 23, 1966.]

PACKARD-BELL ELECTRONICS CORPORATION, Plaintiff and Respondent, v. DEPARTMENT OF PROFESSIONAL AND VOCATIONAL STANDARDS et al., Defendants and Appellants.

Thomas C. Lynch, Attorney General, Henry G. Ullerich and Warren H. Deering, Deputy Attorneys General, for Defendants and Appellants.

Robert E. Victor for Plaintiff and Respondent.

ROTH, P. J.—In 1963 the Legislature enacted the Electronic Repair Dealer Registration Law (Repair Dealer Law), Business and Professions Code, sections 9800-9880.

There is a dearth of legislative history, but it is reasonably clear that the law was passed to protect the public from fraudulent, incompetent and elusive service dealers who in the past have, by unprincipled operations, imposed upon and swindled the public.

The Repair Dealer Law empowers the Director of Professional and Vocational Standards to investigate, regulate and discipline ''service dealers'', defined in section 9801 as follows:[1]

'' (g) 'Service Dealer' means a person who, for compensation, engages in the business of repairing, servicing, or maintaining television, radio, or phonographic equipment normally used or sold for use in the home. ''

---

[1] All references are to the Business and Professions Code, unless otherwise noted.

The Repair Dealer Law makes it unlawful to act as a service dealer without having a valid current registration (§ 9840). Under section 9841 the director may refuse to validate or may invalidate the registration of a service dealer for a number of reasons ((a) to (f) of the section) which may be generally classified as fraudulent or dishonest acts or conduct constituting gross negligence.

In addition, the service dealer is required to record all work done and parts supplied on invoices, one copy of which is to go to the customer (§ 9842); to return replaced parts to the customer (with certain exceptions) (§ 9843); to restrict his charges to his estimate unless the customer otherwise consents (§ 9844). A dealer may not compensate employees or partners on the basis of the value of parts replaced by such employee or partner (§ 9845); the service dealer must maintain such records as are required by the director (§ 9847). Finally, the director is empowered to regulate the use of the word ''guarantee'' and words of like import (§ 9846).

Appellants Department of Professional and Vocational Standards, and its officers, Harold J. Powers and Daniel J. Weston, informed respondent Packard-Bell Electronics Corporation (Packard-Bell) that it was required to register under the Repair Dealer Law. Packard-Bell sued for declaratory relief, alleging that it is exempt from the Repair Dealer Law by virtue of section 9804, and concludes with the prayer that appellants be restrained from enforcing the provisions of the Repair Dealer Law against it.

The case was tried upon an agreed statement of facts. Judgment was rendered in favor of Packard-Bell. The appeal is from the judgment. The agreed statement of facts in its entirety is as follows:

''1. Plaintiff is primarily engaged in the design, development, manufacture and sale of electronic products for the home, for industry and for the United States Government.

''2. An important segment of plaintiff's business is the manufacture and sale of television, radio and phonograph equipment through its Home Products Division.

''3. Plaintiff, through its Service Division, engages, for compensation, in the business of repairing, servicing or maintaining television, radio or phonograph equipment used or sold for use in the home.

''4. Plaintiff is presently licensed pursuant to Chapter 9, (commencing with Section 7000) of Division 3 of the Business

and Professions Code holding a C-61 (Installation of Electronic Systems and Equipment) Specialty Contractor's License.[2]

"5. A portion of plaintiff's installation of television, radio, and phonographic equipment in private homes involves functions which constitute alterations, improvements, or additions to the building. Plaintiff holds the appropriate contractor's license for these functions.

"6. A major portion of the activities of plaintiff's Service Division is installing, repairing, servicing, or maintaining television, radio, or phonographic equipment sold for use in the home, which does not become a permanent fixture. These activities are exempt from the provisions of Chapter 9, Division 3 of the Business and Professions Code.

"7. The installation of all television, radio and phonographic equipment repaired, serviced, or maintained by plaintiff can in the appropriate case, involve a function for which plaintiff holds the appropriate state contractor's license.

"8. Plaintiff does not install, repair, service, or maintain television, radio, or phonographic equipment manufactured by anyone other than plaintiff."

It is clear from items 3-6 of the stipulation that in the performance of those duties respondent acts as a service dealer.

Section 9804 of the Repair Dealer Law upon which Packard-Bell claims an exemption, provides as follows:

"No person who is licensed pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of this code shall be required to register under this chapter if such person's activities are within the scope of his license; nor shall such person be prohibited from repairing, servicing, or maintaining equipment of any type, the installation of which may be performed under his license."

Both parties concede that the first clause of section 9804, *supra,* exempts Packard-Bell from registering as a service dealer as to its activities within items 5, 7 of the stipulation since they are within the scope of its C-61 license.

Packard-Bell asserts that the second clause of section 9804 also exempts its activities under items 3 and 6 of the stipulation and that its C-61 license makes it unecessary for it to register under the Repair Dealer Law.

---

2See California Administrative Code, title 16, section 732.1. (Footnote added.

Packard-Bell argues that the phrase "may be performed" is permissive in the sense that a contractor is exempt if he repairs or services equipment which *could be* installed under his license, even though it has not in fact been so installed. Under this construction, Packard-Bell would be exempt, because, under the admitted facts, "The installation of all television, radio, and phonographic equipment repaired, serviced, or maintained by plaintiff can in the appropriate case, involve a function for which plaintiff holds the appropriate state contractor's license." (Agreed fact, paragraph 7.)

In rebuttal, appellants argue that Packard-Bell's interpretation of the statute would leave much of Packard-Bell's activities unregulated.

Appellants point out that the registrar of contractors has no power to discipline a licensee who is acting beyond the scope of the Contractors License Law. To fortify this argument, appellants point to article 7 (§§ 7090-7124.1) which sets forth the basis for disciplinary action by the registrar. These sections, say appellants, clearly relate to unlawful and undesirable practices in the course of contracting work, and have nothing to do with fraudulent activities with respect to the servicing of electronic equipment.[3]

Section 7028 of the Contractors License Law makes it unlawful for any person to act as a "contractor" without being licensed. Section 7026 defines "contractor" as "any person, who undertakes . . . or does himself . . . construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building . . . or other structure. . . ."

Section 7045 provides: "This chapter does not apply to the sale or installation of any finished products, materials or articles of merchandise, which are not actually fabricated into and do not become a permanent fixed part of the structure."

Section 7046 states: "This chapter does not apply to any construction, alteration, improvement or repair of personal property."

---

[3]In addition, appellants rely on *Terminex Co.* v. *Contractors' State etc. Bd.*, 84 Cal.App.2d 167, 170-171 [190 P.2d 24], which held that a contractor was not subject to disciplinary proceedings by the Contractors' State License Board where he engaged in fraudulent practices with respect to nonstructural termite elimination.

The *Terminex* case, however, was based upon the fact that termite control was within the domain of the Structural Pest Control Board with whom the licensee was also registered. The issue in the case at bench is whether Packard-Bell should be *required* to also register with an additional regulatory agency.

It is clear from the stipulated items 3 and 6 that a major portion of the activities of respondent is not covered by the provisions of Contractors License Law.

It is apparent from a reading of the sections quoted from the Contractors License Law that the ordinary repair of television, radio or phonographic equipment normally used in the home is not regulated by that law.

It should be noted too that section 7090 which sets forth the investigatory and disciplinary powers of the registrar of contractors, provides in part:

"The registrar may proceed to take disciplinary action *as in this article provided* against a person licensed under the provisions of this chapter even though the grounds or cause for such disciplinary action arose upon projects or while the licensee was acting in a capacity or under circumstances or facts which, under the provisions of sections 7044, 7045, 7046 and 7048 of this article, would otherwise exempt him or his operations from the provisions of this chapter." (Italics added.)

This section, however, does not give broad penal powers to the registrar; it is qualified by the words "as in this article provided." Upon a reading of the many grounds for discipline set forth in the article referred to, it becomes clear that the portion of section 7090 quoted above was designed only to prevent a licensee from escaping disciplinary proceedings on a technical reading of the exemption provisions specified in that section, even though he is guilty of the undesirable practices in respect of contracting work which are specifically made a ground for disciplinary action.

Thus, for example, it is conceivable that a licensee may, while acting under one of the exempting provisions, willfully depart from or disregard installation or alteration plans without the consent of the owner (§ 7109), or willfully disregard labor or safety laws (§ 7110) or aid or abet an unlicensed person to avoid the provisions of the licensing laws (§ 7114), and do one or more of these acts under such circumstances that the jurisdiction of the registrar of contractors is properly invoked.

Section 7090 was not intended to subject a licensee such as Packard-Bell, operating under a limited specialty license C-61 (see Cal. Admin. Code, tit. 16, § 732.1), to the disciplinary powers of the registrar, where such licensee in-

dulges in undesirable practices totally unrelated to contracts and contracting.[4]

■ Moreover, the scope of the Repair Dealer Law is totally unrelated to Packard-Bell's competency or integrity as a licensed contractor. The registrar of contractors has no power to insist that Packard-Bell conform to the standards set by the Legislature for service dealers generally.

Appellants point out further that since Packard-Bell's activities as service dealers would be exempt from all regulation by the registrar of contractors and under Packard-Bell's construction of the Repair Dealers' Law, would be likewise free from control under that act, Packard-Bell could repair, maintain and service television, radio and phonographic equipment without any regulation by the state. Appellants concede that the two licensing schemes were intended to be mutually exclusive, but contend that the Legislature did not intend to leave such a gap in the regulatory framework.

It is conceivable that a person could qualify and obtain a C-61 license and confine 100 percent of its business operations to activities covered by items 3 and 6 of the stipulation in the case at bench. If Packard-Bell's contention is sound, such person would be subject to no regulation under the Contractors' License Law or the Repair Dealer Law. In short, the legislative purpose as we conceive it to be, would be completely nullified.

■ We are mindful that the second clause of section 9804 is vague and leaves much to be desired. However, in resolving this controversy, we must give full effect to the apparent purpose of the entire legislative scheme (*Mazza* v. *Austin*, 25 Cal. App.2d 85, 87-88 [76 P.2d 533]; *People* v. *King*, 115 Cal.App. 2d Supp. 875, 878 [252 P.2d 78]; *Boyd* v. *Huntington*, 215 Cal. 473, 482 [11 P.2d 383]; *In re Marquez*, 3 Cal.2d 625, 628 [45 P.2d 342]; *County of Placer* v. *Aetna Casualty & Surety Co.*, 50 Cal.2d 1822, 188-189 [323 P.2d 753]). ■ A construction giving effect to such legislative intent should be adopted where the words used, as here, are of sufficient flexibility to admit of such a construction. (*Jordt* v. *California*

---

[4]The only specified ground for disciplinary action that relates to general fraudulent practices, is section 7116, which provides: ''The doing of any willful or fraudulent act by the licensee as a contractor in consequence of which another is substantially injured constitutes a cause for disciplinary action.''

The phrase ''as a contractor'' clearly limits the power of the registrar to nonexempt activities.

*State Board of Education,* 35 Cal.App.2d 591, 594 [96 P.2d 809] ; *Struckman* v. *Board of Trustees,* 38 Cal.App.2d 373, 376 [101 P.2d 151] ; *H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 320 [301 P.2d 28].)

▮ As we have noted, the Repair Dealer Law seeks to avoid duplicate regulation with Contractors License Law.[5] An examination of Contractors License Law and a comparison with the Repair Dealer Law discloses two independent areas of regulation by the state aimed at eliminating and controlling specific evils peculiar to each area. Packard-Bell's competence as a contractor has little to do with undesirable practices in repairing home electronic equipment. ▮ We do not think that the Legislature intended, for example, to permit Packard-Bell to compensate its employees on the basis of the value of parts replaced, merely because it possesses a limited specialty contractor's license unrelated to the service it is performing.

We conclude that to adopt Packard-Bell's construction of section 9804 and thus to exempt from the provisions of the Repair Dealer Law all persons who possess a contractor's license and who service radio, television and phonographic equipment normally used in a home, but not installed by such person under his contractor's license, would be an undue and unintended restriction on the scope of the Repair Dealer Law.

▮ We hold therefore that Packard-Bell is not exempt from the Repair Dealer Law merely because it services equipment which may, in some cases, be installed under its contractor's license. If, and when it services such equipment, which it has or intends to *in fact* so install, such activity shall be exempt under the provisions of section 9804.

The judgment is reversed.

Herndon, J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 20, 1966.

---

[5]This interpretation is fortified by section 9805 which exempts persons registered under the Repair Dealer Law from the requirements of chapter 9, division 3 ''if such person's activities consist only of repairing, servicing, or maintaining, televisions, radio, and phonographic equipment normally used or sold for use in the home.''